UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTHONY LEWIS,
     Petitioner,

    v.                                 CIVIL ACTION NO.
                                         10-11628-JLT

BRUCE GELB,
     Respondent.

**REPORT AND RECOMMENDATION RE:**
**RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO**
**THE HABEAS CORPUS PETITION**
**(DOCKET ENTRY # 15)**

**August 8, 2012**

**BOWLER, U.S.M.J.**

Respondent Bruce Gelb ("respondent"), Superintendent of the Massachusetts Correctional Institution in Concord, Massachusetts ("MCI-Concord"), opposes issuance of the above styled petition for writ of habeas corpus filed under 28 U.S.C. § 2254 ("section 2254"). (Docket Entry # 15). In the petition, petitioner Anthony Lewis ("petitioner"), an inmate at MCI-Concord, attacks his May 2006 conviction rendered by the Massachusetts Superior Court (Suffolk County) ("the trial court") on the basis of a due

process violation and ineffective assistance of trial and appellate counsel.[1]

Respondent seeks to dismiss the petition because the due process ground is not exhausted thereby presenting a mixed petition. Alternatively, respondent submits that the decisions rendered by the trial court and the Massachusetts Appeals Court ("the appeals court") on the due process and the ineffective assistance of counsel grounds are not contrary to or an unreasonable application of clearly established law as determined by the Supreme Court under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Finally, respondent submits that petitioner's failure to establish a meritorious Fourth Amendment claim precludes the ineffective assistance of counsel claims based on the handling of the Fourth Amendment claim. (Docket Entry # 15).

Petitioner raises the following grounds for relief: (1) ineffective assistance of trial counsel because of a failure "to introduce exculpatory prior inconsistent statements by two witnesses at the suppression hearing that bore on the validity of the warrantless seizure and search" of petitioner (ground

---

[1] The petition includes two due process claims. As stated in the supporting memorandum, petitioner withdrew the due process claim presented in ground three. (Docket Entry # 13, n.3).

2

one);[2] (2) ineffective assistance of trial counsel by not correcting an appeals court's finding on interlocutory appeal (ground two);[3] and (3) improper admission of irrelevant and prejudicial evidence consisting of Detective Brooks' testimony that he knew petitioner before the incident and, based on the observations he made that day, "there was a strong possibility that the property" petitioner carried "was stolen" (Docket Entry # 11, p. 876) (ground three). (Docket Entry ## 1 & 13).

There is little indication that petitioner seeks an evidentiary hearing. Even if he did, under either section 2254(d)(1) or section 2254(d)(2),[4] the record in federal court is limited to the record before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011) ("hold[ing] that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"); Brown v. O'Brien, 666 F.3d 818, 822 & n.3 (1st Cir. 2012) ("[r]eview under the 'fact'

_____

[2] Officer John Ford of the Boston Police Department ("Officer Ford") and Detective Martin Brooks of the Boston Police Department ("Detective Brooks") testified at the suppression hearing. The allegedly inconsistent statement of Officer Ford is in a police report and the inconsistent statement of Detective Brooks is in the grand jury transcript.

[3] The finding involved petitioner's conduct at a pay telephone.

[4] Grounds one, two and three challenge the conviction under subsection 2254(d)(1). Ground one also challenges the conviction under subsection 2254(d)(2).

prong [section 2254(d)(2)] is limited to "'the record that was before [the] state court'") (citing <u>Cullen</u>, 131 S.Ct. at 1400).

## PROCEDURAL BACKGROUND

On December 18, 2002, a Suffolk County grand jury indicted petitioner on one count of breaking and entering in the daytime with the intent to commit a felony in violation of section 18 of Massachusetts General Laws chapter 266 ("chapter 266") and one count of receiving stolen property in excess of $250 in violation of section 60 of chapter 266. The indictments also charged petitioner as a habitual offender.

On April 11, 2003, trial counsel filed a motion to suppress all observations made by police officers and all statements made by petitioner. (Docket Entry # 11, pp. 6 & 17-24). On October 28, 2003, an Associate Justice of the trial court ("the motion judge") conducted a hearing on the motion to suppress. Officer Ford and Detective Brooks testified at the one day hearing.

Officer Ford testified on direct that after he boarded the trolley, and without posing any question to petitioner, petitioner said, "I just found those," in reference to two bags in his possession. On cross examination, trial counsel did not ask Officer Ford about his statements in the police report that

4

he prepared.  The relevant portion of the police report reads as follows:

> Suspect ran across Comm Ave and jumped onto the trolley. Officer Ford stopped the trolley and the suspect was found seated with the bags by Det Brooks and Officer Kelley. During the threshold inquiry a protective pat down was conducted and a 1 foot black metal pry bar with paint marks was found in suspect's pocket along with various foreign currency.  One of the bags was marked Compaq and clearly contained a lap top computer.  Suspect was placed under arrest for possession of burglarious tools and receiving stolen property valued in excess of $250.00.  *Without inquiry from the officers, the suspect stated that he found the computers*.  Suspect transported to D14 by the K101D Officers Foundas and Leary.[5]

(Docket Entry # 11, p. 250) (emphasis added).[6]

Detective Brooks testified that petitioner was removed from the trolley and "frisked outside."  (Docket Entry # 11, p. 345). Before the grand jury, however, Detective Brooks testified that he performed the pat frisk, recovered a pry bar from

---

[5]  The text of the excerpt of the foregoing police report is entirely capitalized.

[6]  Petitioner argues that the police report states that petitioner said he "just found those" after he was pat frisked and arrested.  In ground one, petitioner contends that trial counsel was deficient by not bringing the discrepancy to the attention of the motion judge by impeaching Officer Ford with the police report.  Petitioner also reasons that if trial counsel brought this evidence to the attention of the motion judge and the appeals court on interlocutory review, the appeals court would have upheld the motion judge's decision allowing the motion to suppress.  (Docket Entry # 13).

petitioner's person and thereafter removed petitioner from the

trolley.[7]  (Docket Entry # 11, pp. 466-467).

On November 4, 2003, the Commonwealth filed a memorandum in

opposition to the motion to suppress.  (Docket Entry # 11, pp. 7

& 224-230).  Therein, the Commonwealth argued inter alia that

---

[7] The relevant grand jury testimony of Detective Brooks is
as follows:

Q.  Did you board that train?
A.  Yes, sir.
Q.  Did Mr. Lewis have anything on his person when you
boarded that train?
A.  Yes, sir.
Q.  What did he have on his person, Detective?
A.  He had on the property I just mentioned, the carry bags
and the like.
Q.  Did you know what was in those bags?
A.  Not at the time, no, sir.
Q.  What did you do with [petitioner] at that time?
A.  We detained him.
Q.  Did you ever-did you do a pat frisk of [petitioner]?
A.  Yes, sir.
Q.  When you did the pat frisk of [petitioner], was there
anything recovered from his person?
A.  What I would call a pry bar.

After Detective Brooks described paint chips on the pry
bar, the Assistant District Attorney asked him:

Q.  After you [sic] the paint chips on this pry bar on
[petitioner], what did you do at that point, Detective?
A.  We took him off the trolley.

(Docket Entry # 11, pp. 465-467).

With respect to ground one, petitioner argues that trial
counsel rendered deficient performance by not impeaching
Detective Brooks with the prior grand jury testimony that he
conducted the pat frisk before removing petitioner from the
trolley.

petitioner's unprovoked statement to police on the trolley that
he "'just found those,'" in reference to two bags that he
carried onto the trolley, "elevated the level of suspicion" to
support a pat frisk of petitioner.[8] (Docket Entry # 11, pp. 227-
229). On November 12, 2003, the motion judge allowed the motion
to suppress in a written opinion.[9] On December 12, 2003, the
Commonwealth filed a motion in the Massachusetts Supreme
Judicial Court ("SJC") seeking an interlocutory appeal. <u>See</u>
Rule 15(a)(2), Mass. R. Crim. P.; Mass. Gen. L. ch. 278, § 28E.[10]
On December 22, 2003, the Commonwealth filed a motion to

---

[8] To support the ineffective assistance of counsel claim,
petitioner asserts that trial counsel failed to clarify to the
motion judge and the appeals court that the police report states
that petitioner made the statement after his removal from the
trolley. (Docket Entry # 13).

[9] The findings of fact are set forth in the factual
background section.

[10] The statute allows the Commonwealth and the defendant to
seek an interlocutory appeal. In pertinent part, it reads as
follows:

> An application for an appeal from a decision, order or
> judgment of the superior court determining a motion to
> suppress evidence prior to trial may be filed in the
> supreme judicial court by a defendant or by and on behalf
> of the commonwealth by the attorney general or a district
> attorney. If such application is denied, or if such
> application is granted but the interlocutory appeal is
> heard by a single justice, the determination of the motion
> to suppress evidence shall be open to review by the full
> court after trial in the same manner and to the same extent
> as determinations of such motions not appealed under the
> interlocutory procedure herein authorized.

Mass. Gen. L. ch. 278, § 28E.

reconsider the decision by the motion judge.  The motion judge

denied reconsideration on January 15, 2004.  In pertinent part,

the ruling reads as follows:

> [Petitioner] was seized when the Police Officers took the
> defendant off the train.  No reasonably objective person
> could feel that they were free to leave at that point.  The
> observation of the word Compaq on the computer bag did not
> provide the police with any more information than they
> previously had.  They seized [petitioner] on a hunch that
> because of his past, he might be doing something wrong.

(Docket Entry # 11, pp. 7-8 & 238).

On February 25, 2004, a Single Justice of the SJC allowed

an application for interlocutory review of the motion judge's

decision.  In an appellate brief filed in October 2004, the

Commonwealth cited Detective Brooks' testimony at the

suppression hearing that petitioner held the pay telephone

"about eighteen inches away from his head, and he did not appear

to be talking; he had his back to the wall and was looking up

and down the street."[11]  (Docket Entry # 11, p. 159).

---

[11]  At the suppression hearing, Detective Brooks testified
that he observed petitioner pick up the telephone receiver and
that he appeared to be talking.  (Docket Entry # 11, p. 346).
Officer Ford testified that he saw petitioner holding the
telephone approximately 18 inches away from his head and that he
did not appear to be talking into the receiver.  (Docket Entry #
11, pp. 308 & 311).  The motion judge's factual findings,
reproduced below, simply reflect that Detective Brooks saw
petitioner pick "up the telephone receiver . . . look up and
down that street and as the MBTA Green Line trolley approached,
the defendant hung up the phone."  (Docket Entry # 11, p. 33).
The appeals court supplemented the motion judge's factual
finding with Officer Ford's aforementioned observations.
Petitioner argues that the trial counsel's failure to challenge

On October 26, 2005, the appeals court reversed the motion judge's order. Drawing facts from the motion judge's findings and supplementing the facts with "uncontroverted testimony at the suppression hearing,"[12] the appeals court found that, "Although [petitioner] picked up the receiver, [petitioner] held it about eighteen inches away from his head and did not appear to be speaking . . . When a Commonwealth Avenue trolley approached, the defendant hung up the receiver, retrieved the two bags, and boarded the trolley." (Docket Entry # 11, pp. 40-41). The appeals court also found that petitioner "acted furtively at the telephone, apparently attempting to secrete the bags while pretending to make a telephone call and scanning the street." (Docket Entry # 11, p. 42). The court used this evidence to support the conclusion that "the police had a reasonable suspicion, based on specific and articulable facts, that the defendant had committed a crime."[13] (Docket Entry # 11,

and clarify the Commonwealth's characterization of petitioner's conduct at the pay telephone before the appeals court contributed to the ineffective assistance of counsel claim in ground two. (Docket Entry # 13).

[12] The appeals court cited state law for this principle. Petitioner argues that Detective Brooks' testimony, see fn. 10, established that the facts were not uncontroverted with respect to petitioner's conduct at the pay telephone.

[13] Like the motion judge, the appeals court determined that a seizure took place when the police removed petitioner from the trolley. The appeals court's reasoning that the police had the necessary reasonable suspicion at that time is as follows:

p. 42).  On May 30, 2006, a jury found petitioner guilty of
breaking and entering and receipt of stolen property.  The trial
court sentenced petitioner to a minimum of seven years and a
maximum of seven years and one day at MCI Cedar Junction on
Count One.  On Count Two, the trial court sentenced petitioner
to a one year term of probation to run from and after the
sentence on Count One.  The Commonwealth entered a *nolle
prosequi* for the habitual offender portion of the indictments.

On June 6, 2006, petitioner filed a timely appeal.  In
April 2008, represented by a different attorney ("appellate
counsel"), petitioner filed a motion to stay the direct appeal.
On April 28, 2008, the appeals court allowed the motion and
stayed the direct appeal to allow petitioner to pursue a motion

---

By that time, the police collectively knew, <u>see</u>
<u>Commonwealth v. Gullick</u>, 386 Mass. 278, 283 (1982)
(collective information sufficient for probable cause),
that the defendant had been convicted previously for break-
ins in that section of Boston; he had been a suspect in
connection with a recent break-in in the area; he was
observed in clothing similar to that worn by the
perpetrator in the recent break-in and carrying bags
fashioned to contain computers (a computer having been
stolen in that break-in); he acted furtively at the
telephone, apparently attempting to secrete the bags while
pretending to make a telephone call and scanning the
street; and, once on the trolley and approached by the
police, he made an unsolicited statement that he had found
the bags, a statement that the police could reasonably view
as evidence of consciousness of guilt.  Given these
elements, the police had a reasonable suspicion, based on
specific and articulable facts, that the defendant had
committed a crime.

(Docket Entry # 11, p. 42).

for a new trial. (Docket Entry # 11, p. 45). Shortly thereafter, petitioner filed a motion for post conviction relief under Rule 30(b), Mass. R. Crim. P. ("Rule 30(b) motion"). (Docket Entry # 11, pp. 47-49). Similar to grounds one and two, the Rule 30(b) motion attacked the conviction on the basis of trial counsel's ineffective assistance for: (1) failing to impeach Officer Ford with the police report and Detective Brooks with his grand jury testimony at the suppression hearing; and (2) failing to seek corrective measures after the appeals court reversed the suppression order.

On October 23, 2008, the motion judge denied the new trial motion without a hearing. On October 31, 2008, petitioner filed a timely appeal. On November 20, 2008, the appeals court vacated the stay and consolidated petitioner's appeal of the denial of the Rule 30(b) motion with the direct appeal. (Docket Entry # 11, p. 45). Petitioner's appellate brief undeniably presented the court with the ineffective assistance of trial counsel claims under both the federal standard under Strickland v. Washington, 466 U.S. 668 (1984), and the functionally equivalent state law standard under Commonwealth v. Saferian, 315 N.E.2d 878 (Mass. 1974). (Docket Entry # 11, pp. 129-141) (repeatedly citing and discussing Strickland and Saferian).

On February 2, 2010, the appeals court affirmed the

convictions and the denial of the Rule 30(b) motion.  The court

succinctly rejected the federal and state law ineffective

assistance of counsel claims in the following manner:

> Counsel's strategy of using discrepancies in the officers'
> respective testimony to the defendant's advantage, rather
> than pointedly attempting to impeach them, was a reasonable
> tactical choice.  See Commonwealth v. Hudson, 446 Mass.
> 709, 715, 846 N.E.2d 1149 (2006).  Counsel also cannot be
> faulted for not seeking to "correct" this court's
> interlocutory decision on the suppression issues in the
> case.  In that decision, this court properly took into
> account uncontroverted and undisputed facts that the
> suppression motion judge implicitly credited.  See
> Commonwealth v. Isaiah I., 448 Mass. 334, 337, 861 N.E.2d
> 404 (2007).

(Docket Entry # 11, p. 422).[14]

---

[14]  Petitioner's argument that the appeals court did not
reach the merits of the federal ineffective assistance of
counsel claim because the court only cited the Hudson decision
and de novo review therefore applies (Docket Entry # 13, pp. 28-
29) is misguided.  "'[T]he standard for ineffective assistance
under Massachusetts law appears functionally equivalent to the
federal standard.'"  Smiley v. Maloney, 422 F.3d 17, 21 (1st Cir.
2005); accord Lynch v. Ficco, 438 F.3d 35, 48 (1st Cir. 2006)
(state standard for ineffective assistance of counsel under
Saferian is "functional equivalent" of federal standard under
Strickland); Ouber v. Guarino, 293 F.3d 19, 32 (1st Cir. 2002)
("for habeas purposes, Saferian is [a] functional equivalent of
Strickland"); Scarpa v. Dubois, 38 F.3d 1, 7 (1st Cir. 1994)
(noting as to ineffective assistance of counsel claims that,
"[d]espite minor differences in phraseology, the two standards-
state and federal-strike us as equivalent").  Petitioner
presented the appeals court with the federal claims and the
appeals court rejected the claims based on their substance.  The
decision was therefore on the merits within the meaning of
section 2254(d).  See Teti v. Bender, 507 F.3d 50, 56 (1st Cir.
2007) ("matter is 'adjudicated on the merits' if there is a
'decision finally resolving the parties' claims, with res

The SJC summarily denied the ALOFAR on March 31, 2010.  On September 23, 2010, petitioner filed this petition.  On February 5, 2011, almost a year after the SJC denied the ALOFAR, petitioner filed a motion for leave to file a supplemental ALOFAR in the SJC.  (Docket Entry # 17, Ex. 1, pp. 2-3).  The SJC's docket reflects the motion for leave as a "Petition to reconsider [the] denial of" the ALOFAR.  (Docket Entry # 17, Ex. 1, p. 27).  On March 2, 2011, the SJC denied the "petition to reconsider the denial" of the ALOFAR.  (Docket Entry # 17, Ex. 1, pp. 26-27).

FACTUAL BACKGROUND

The historical, basic or primary facts determined by a state court are presumed correct, although a petitioner may rebut the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Coombs v. State of Maine, 202 F.3d 14, 18 (1st Cir. 2000) (presumption applies to "'basic, primary, or historical facts'" with respect to external events including "the credibility of their narrators"); accord Sleeper v. Spencer, 510, F.3d 32, 38 (1st Cir. 2007) ("the term 'facts'" in section 2254(e)(1) "refers to 'basic, primary, or historical facts,' such as witness credibility and recitals of external

judicata effect, that is based on the substance of the claim advanced").

13

events"). The historical facts found by the suppression judge
are as follow:

On November 12, 2002, at approximately 1:00 p.m.,
Officer John Ford of the Boston Police Department, while
working in plain clothes and in an unmarked police car,
observed defendant Lewis on Commonwealth Avenue in the
Brighton Section of Boston near Sutherland Road. Officer
Ford was familiar with the defendant from a previous stop
that had taken place in the same general area eight days
before in regard to a break [sic] and entering and theft of
a laptop computer. At that time, the defendant was stopped
by the officer and taken into custody for possible
identification by a person whose home had been broken into.
Although the suspect was described as wearing a black
jacket that was either leather or possibly puffy, the
defendant was stopped wearing a t-shirt in weather the
officer described as cold. The defendant was not
identified as the perpetrator and was released.

When Officer Ford observed the defendant on November
12, 2002, he was carrying a newspaper under his arm and was
wearing a black leather jacket.[15] Officer Ford then
broadcast to other Boston Police in the area that he had
just seen the defendant. Approximately 30 minutes later,
Officer Ford was contacted by Detective Martin Brooks who
informed the officer that the defendant was on a pay phone
in the area of Commonwealth Avenue and Sutherland Road.
When Detective Brooks saw the defendant, he was carrying
what appeared to be two laptop computer bags. The
detective saw the defendant place the computer bags between
two barrels as he picked up the telephone receiver.[16] The
officers observed the defendant look up and down the street
and as the MBTA Green Line trolley approached, the
defendant hung up the phone, reached down, retrieved the
two bags and proceeded to board the trolley.

Officer Ford approached the trolley and identified
himself to the driver. The driver opened the door and the

---

[15] Petitioner disputes that the jacket matches the
description of the jacket described in the prior break in.

[16] Petitioner disputes the appeals court finding (Docket
Entry # 11, p. 42) that he acted furtively at the telephone.

officer boarded the train along with Detective Brooks and
Boston Police Detective Mahoney.  As they approached the
defendant, he stated, "I found these," referring to the two
bags.[17]  The officers then removed the defendant from the
train in order to allow the train to continue.  The
defendant was pat frisked and a metal pry bar with paint
chips on the end was recovered from the defendant.[18]  The
bags contained laptop computers, jewelry and other items.
The defendant was placed under arrest for receiving stolen
property.

(Docket Entry # 11, pp. 32-34).


DISCUSSION

I.  <u>AEDPA Standard of Review</u>

    The AEDPA governs these proceedings because petitioner

filed this petition after April 24, 1996.  Section 2254(d)(1)

establishes "two categories of cases in which a state prisoner

may obtain federal habeas relief with respect to a claim

adjudicated on the merits in state court."  <u>Terry Williams v.</u>

<u>Taylor</u>, 529 U.S. 362, 404 (2000).  Under the first category, "a

state court determination is 'contrary to' clearly established

law if the court 'applies a rule that contradicts the governing

law set forth' by the Supreme Court or 'confronts a set of facts

that are materially indistinguishable from a decision of [the

Supreme Court] and nevertheless arrives at a result different

---

        [17]  Petitioner's appellate counsel disputes that petitioner
said "I found these" before the police arrested petitioner.

        [18]  The grand jury testimony suggests Detective Brooks may
have pat frisked petitioner before removing him from the
trolley.

from [its] precedent.'" Gomes v. Brady, 564 F.3d 532, 537 (1st Cir. 2009); accord Ramdass v. Angelone, 530 U.S. 156, 165-166 (2000) (decision is contrary to "clearly established federal law if it applies a legal rule that contradicts" the "prior holdings" of the Supreme Court or "reaches a different result from" a Supreme Court case "despite confronting indistinguishable facts"); Terry Williams, 529 U.S. at 405-406 (same).

Under the second category, the federal court may grant the writ if the relevant state court decision "'involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'" Terry Williams, 529 U.S. at 404-405 (quoting statute with ellipses omitted). An unreasonable application of clearly established federal law occurs if the state court "'correctly identifies the governing legal principles, but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply.'" Gomes, 564 F.3d at 537; see Foxworth v. St. Amand, 570 F.3d 414, 425 (1st Cir. 2009).

"'[C]learly established Federal law'" refers to "'the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state court decision.'" Yeboah-Sefah v. Ficco, 556 F.3d 53, 65 (1st Cir. 2009) (brackets omitted). The inquiry is an objective one, see McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002), insofar as the decision "must have been 'objectively unreasonable.'" Wiggins v. Smith, 539 U.S. 510, 520 (2003).

An objectively unreasonable application of the relevant jurisprudence differs from an incorrect or erroneous application of such jurisprudence. See Terry Williams, 529 U.S. at 365; accord Wiggins, 539 U.S. at 520-521 ("state court's decision must have been more than incorrect or erroneous"). Under the unreasonable application prong, the "habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Terry Williams, 529 U.S. at 365; accord Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable--a substantially higher threshold"). When "it is the state court's application

17

of governing federal law that is challenged, the decision 'must
be shown to be not only erroneous, but objectively
unreasonable.'" Waddington v. Sarausad, 555 U.S. 179, 190
(2009); accord Foxworth v. St. Amand, 570 F.3d at 425 ("state
court's decision is not vulnerable unless it evinces some
increment of incorrectness beyond mere error").

The unreasonableness standard in section 2254(d) "is not a
test of the confidence of a federal habeas court in the
conclusion it would reach as a *de novo* matter." Harrington v.
Richter, 131 S.Ct. 770, 778 (2011). Rather, section 2254(d) is
"designed to confirm that state courts are the principal forum
for asserting constitutional challenges to state convictions."
Id.; see Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007) (same).

II. Ground One

Ground one (Docket Entry # 1), expanded in petitioner's
memorandum (Docket Entry # 13), raises an ineffective assistance
of counsel claim due to trial counsel's failure to impeach
inconsistent statements made by Officer Ford and Detective
Brooks at the suppression hearing that bore on the validity of
the warrantless seizure and search. Specifically, petitioner
alleges that trial counsel failed to competently litigate
petitioner's Fourth Amendment claim when he elected not to
impeach Officer Ford and Detective Brooks with their respective,

inconsistent statements on the timing of petitioner's statement,

"I just found those," and on the timing of the pat frisk.

(Docket Entry # 13).  Petitioner also alleges that, apart from

the foregoing inculpatory statement made to the officers, none

of the factors traditionally relied upon in support of

"reasonable suspicion" was present to warrant a lawful seizure.

(Docket Entry # 13).

As previously explained and despite petitioner's contrary

belief, section 2254(d) review applies.[19]  See Yeboah-Sefah, 556

F.3d at 70 (the petitioner must satisfy AEDPA standard "where

the petitioner's claim was adjudicated on the merits by the

state court").  In addition to subsection 2254(d)(1) review,

petitioner seeks review of ground one under subsection

2254(d)(2).  (Docket Entry # 13).

Subsection 2254(d)(2) provides habeas relief if the

petitioner shows that the state court decision "'was based on an

unreasonable determination of the facts' in light of the record

before it."  Robidoux v. O'Brien, 643 F.3d 334, 338 (1st Cir.

2011) (quoting section 2254(d)(2)).  A state court decision that

was adjudicated on the merits that was "based on a factual

determination will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in

the state-court proceeding."  Miller-El v. Cockrell, 537 U.S.

---

[19]  See footnote 13.

322, 324 (2003). A factual determination by a state court "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 130 S.Ct. 841, 849 (2010).

Here, the relevant inquiry is whether "the SJC's ineffective assistance of counsel analysis was based on an unreasonable determination of the facts in light of the evidence presented at trial." Shuman v. Spencer, 636 F.3d 24, 32 (1st Cir. 2011) (citing section 2254(d)(2)). For example, the Court in Wood concluded under section 2254(d)(2) review in the context of an ineffective assistance of counsel claim that "the state court's finding that Wood's counsel made a strategic decision not to pursue or present evidence of Wood's mental deficiencies was not an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings." Wood, 130 S.Ct. at 849.

When a petitioner brings a claim under both subsections 2254(d)(1) and 2254(d)(2), the 2254(d)(1) analysis is dependent on the outcome of the 2254(d)(2) analysis. Terry Williams, 529 U.S. at 386 (subsection 2254(d)(2) "provides the relevant context for our interpretation of [subsection] 2254(d)(1)"). Federal habeas courts must therefore "make as the starting point of their analysis the state courts' determinations of fact,

including that aspect of a 'mixed question' that rests on a finding of fact." Id. Accordingly, this court turns to analysis of ground one under subsection 2254(d)(2).

A. Subsection 2254(d)(2)

The ineffective assistance of counsel claim is grounded in trial counsel's failure to impeach Officer Ford and Detective Brooks with their allegedly inconsistent statements. (Docket Entry # 13). The appeals court concluded that trial counsel's "strategy of using discrepancies in the officers' respective testimony to the defendant's advantage, rather than pointedly attempting to impeach them, was a reasonable tactical choice." Commonwealth v. Lewis, 920 N.E.2d, 326, 326 (Mass. 2010); (Docket Entry # 11, p. 422). The Court in Terry Williams instructs that federal judges must "attend with the utmost care to state-court decisions, including all of the reasons supporting their decisions, before concluding that those proceedings were infected by constitutional error sufficiently serious to warrant the issuance of the writ." Terry Williams, 529 U.S. at 386. Further, subsection 2254(d)(2) only provides a federal habeas remedy when a state court decision "was based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding*." Id. (emphasis added).

In the case at bar, it was not unreasonable for the appeals court to consider the evidence presented and conclude as a matter of fact that trial counsel made a strategic or tactical choice when he elected not to impeach Officer Ford and Detective Brooks for their prior inconsistent statements. See Wood, 130 S.Ct. at 852 ("whether counsel's decision was the product of strategy is a question of fact" for the state courts for purposes of subsection 2254(d)(1)); see also Carr v. Schofield, 364 F.3d 1246, 1264 (11th Cir. 2004) (whether counsel's decisions were tactical or strategic is a question of fact); see also Berryman v. Morton, 100 F.3d 1089, 1095 (3rd Cir. 1993) (same). Although petitioner correctly asserts that trial counsel did not explicitly reveal the tactical reason behind his handling of the motion to suppress (Docket Entry # 13), trial counsel's strategy at the suppression hearing was to show that police observations did not justify the stop of petitioner regardless of the timing of the subsequent pat frisk or inculpatory statement, "I just found those." (Docket Entry # 11, pp. 20-24).

"A decision [by trial counsel] cannot be fairly characterized as 'strategic' unless it is a conscious choice between two legitimate and rational alternatives." Wood, 130 S.Ct. at 853; see Wiggins, 539 U.S. at 526 (concluding that counsel's "failure to investigate thoroughly resulted from

inattention and not reasoned strategic judgment"). The Court in Wood further noted that although deference is afforded to counsel's discretion regarding strategic decisions, "for this deference to apply there must be some evidence that the decision was just that: strategic." Wood, 130 S.Ct. at 853.

Here, on cross examination of Officer Ford, trial counsel attempted to demonstrate that petitioner's behavior prior to the stop was innocent conduct (Docket Entry # 11, p. 527), that the petitioner was not identified during the prior stop eight days before the November 12, 2002 incident (Docket Entry # 11, pp. 523-524) and that Officer Ford could not say whether petitioner was actually speaking on the pay telephone (Docket Entry # 11, p. 532). As a result, the appeals court had the evidence to afford deference to trial counsel and did not unreasonably determine the facts that trial counsel's implicit decision not to impeach Officer Ford was tactical.

Similarly, the appeals court did not unreasonably conclude that trial counsel's decision not to impeach Detective Brooks was also a tactical choice as a matter of fact. As respondent correctly submits, Detective Brooks' testimony that the pat frisk occurred after petitioner was stopped was corroborated by both Officer Ford's police report (Docket Entry # 11, p. 250) and Officer Ford's testimony at the suppression hearing (Docket

Entry # 11, p. 516).  As a result of this corroborating

evidence, trial counsel made the implicit decision not to

impeach Detective Brooks due to the unlikely chance that the

motion judge would have found differently had Detective Brooks'

grand jury testimony been submitted for impeachment.  Thus, the

appeals court did not unreasonably conclude as a fact that trial

counsel's decision not to impeach Detective Brooks was a

tactical choice.

Accordingly, ground one does not warrant habeas relief

under subsection 2254(d)(2).  The AEDPA analysis of the

ineffective assistance of counsel clam therefore progresses to

subsection 2254(d)(1).

B.  Subsection 2254(d)(1)

In ground one, petitioner challenges trial counsel's

failure to impeach the inconsistent testimonies of Officer Ford

and Detective Brooks at the suppression hearing with their prior

inconsistent statements.  (Docket Entry # 13).  Petitioner

submits that trial counsel incompetently handled the Fourth

Amendment issues thus depriving him of his Sixth Amendment right

to effective assistance of counsel.  (Docket Entry # 13).

Federal habeas review is generally not available for Fourth

Amendment claims.  See Stone v. Powell, 428 U.S. 465 (1976).

The decision in Stone holds that, "[W]here the State has

provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone, 428 U.S. at 482; accord Sanna v. DiPaolo, 265 F.3d 1, 8 (1st Cir. 2001) (Stone "stands for the proposition that a federal habeas court ordinarily cannot revisit a state court's disposition of a prisoner's Fourth Amendment claims"); see Tart v. Commonwealth of Massachusetts, 949 F.2d 490, 497 n.6 (1st Cir. 1991). A "'full and fair opportunity' to litigate means that the state has made available to [petitioner] a set of procedures suitably crafted to test for possible Fourth Amendment violations." Sanna, 265 F.3d at 9.

Petitioner does not raise a cognizable Fourth Amendment claim under Stone because he had a full and fair opportunity to litigate it in state court. See Stone, 428 U.S. at 482. Petitioner received an evidentiary hearing on the motion to suppress and the motion judge allowed the motion. (Docket Entry # 11, pp. 32-36). On interlocutory review, the appeals court issued lengthy findings in the course of reversing the motion judge's decision. (Docket Entry # 11, pp. 40-43). Petitioner raised and the appeals court addressed the legality of the warrantless stop and seizure and the use of police officers'

prior knowledge of petitioner's criminal conduct to establish

reasonable suspicion.  (Docket Entry # 11, pp. 40-43).

The Supreme Court in Kimmelman v. Morrison, 477 U.S. 365

(1986), however, carved out an exception for Sixth Amendment

claims arising from Fourth Amendment violations.  As explained

in Kimmelman:

> Where defense counsel's failure to adequately litigate a
> Fourth Amendment claim competently is the principle
> allegation [in a claim] of ineffectiveness [of counsel],
> the defendant must prove that his Fourth Amendment claim is
> meritorious and that there is a reasonable probability that
> the outcome of the trial would have been different absent
> the excludable evidence.

Kimmelman, 477 U.S. at 375.  A defendant may therefore obtain

habeas relief where trial counsel's incompetent handling of a

meritorious Fourth Amendment claim deprives a defendant of a

Sixth Amendment right to effective assistance of counsel and a

reasonable probability exists that the trial's outcome would

have been different.  See id. at 380-381.

In the case at bar, the ineffective assistance of counsel

claim in ground one challenges trial counsel's failure to

introduce the prior inconsistent statements of Officer Ford and

Detective Brooks to impeach their credibility.  (Docket Entry #

13).  Petitioner submits that, apart from the inculpatory

statement, "I just found those," made to the officers, none of

the factors traditionally relied upon in support of "reasonable

suspicion" were present to warrant a lawful seizure thereby
raising a meritorious Fourth Amendment claim. (Docket Entry #
13). The principle Sixth Amendment challenge is grounded upon
trial counsel's inadequate and ineffective handling of the
Fourth Amendment issue at the suppression hearing. (Docket
Entry # 13). Thus, the exception dictated in Kimmelman applies.
See Kimmelman, 477 U.S. at 375. In order to bring a Sixth
Amendment claim of ineffective assistance of counsel under the
Kimmelman exception, petitioner must demonstrate that the Fourth
Amendment issue is meritorious and that there is a reasonable
probability that the outcome of the trial would have been
different absent the excludable evidence.

1.  Existence of Meritorious Claim

     The Supreme Court in Kimmelman established a high standard
of review for the merits of a Fourth Amendment issue. See
Kimmelman, 477 U.S. at 382 ("a meritorious *Fourth Amendment*
issue is necessary to the success of a *Sixth Amendment* claim . .
. [and] a good *Fourth Amendment* claim alone will not earn a
prisoner federal habeas relief") (emphasis in original). It is
incorrect to "believe that a prisoner need only allege
ineffective assistance, and if he has an underlying, meritorious
*Fourth Amendment* claim, the writ will issue and the State will
be obligated to retry him without the challenged evidence." Id.

at 381 (emphasis in original). "Only those habeas petitioners who can prove under Strickland that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence." Id. at 382.

Respondent correctly asserts that petitioner does not raise a meritorious Fourth Amendment claim. (Docket Entry # 15). The appeals court (Docket Entry # 11, p. 42) and the motion judge (Docket Entry # 11, p. 238) properly found that the police officers' entry onto the trolley did not constitute a stop. See United States v. Drayton, 536 U.S. 194, 203 (2002) (boarding of bus by police and questioning of passengers did not constitute seizure). Both the appeals court and the motion judge correctly determined that the stop occurred only when officers removed petitioner from the trolley, at which time there was reasonable suspicion based on specific, articulable facts to justify the intrusion. See Terry v. Ohio, 392 U.S. 1, 21 (1968) ("police officer must be able to point to specific articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion"). Hence, there is no merit to a Fourth Amendment claim based on police officers' lack of reasonable suspicion prior to the stop.

Here, there existed adequate reasonable suspicion prior to the stop to justify the intrusion. Contrary to petitioner's belief (Docket Entry # 13), police officers are permitted to establish reasonable suspicion based on their knowledge of a defendant's prior breaking and entering convictions. See United States v. Kimball, 25 F.3d 1, 7 (1st Cir. 1994). "A police officer's knowledge of an individual's prior criminal activity is material to whether the officer reasonably suspects that criminal activity has or may be occurring." Id.; see Commonwealth v. Gomes, 903 N.E.2d 567, 573 (Mass. 2009) (officer's knowledge of the defendant's past convictions may serve as specific and articulable facts justifying an investigatory stop under state and federal law). In the case at bar, Officer Ford had knowledge of petitioner's prior breaking and entering convictions. (Docket Entry # 11, p. 505). At the suppression hearing, Officer Ford testified that he "knew that [petitioner] had been arrested and convicted for numerous breaks in the Brighton area." (Docket Entry # 11, p. 505). Petitioner was also a suspect in a prior break in (Docket Entry # 11, p. 503) and was wearing a black leather jacket (Docket Entry # 11, p. 499) on the day of the stop that matched the description of the suspect involved in the prior break in (Docket Entry # 11, p. 503). Although petitioner was later released from police

custody because he was not identified by the victim of the prior break in (Docket Entry # 11, pp. 233 & 305), this fact regarding his release does not alter the existence of police officers' prior knowledge of his other breaking and entering convictions.

Additionally, police officers may observe and consider petitioner's actions immediately prior to and at the time of the stop in order to establish reasonable suspicion. See generally Commonwealth v. Doulette, 591 N.E.2d 213, 214 (Mass. 1992) ("question of reasonableness of the officer's conduct is determined on the basis of the information possessed by the officers at the time a decision to act is made"); see also Terry, 392 U.S. at 21-22 (stops without a warrant are constitutional on the less demanding basis of "reasonable suspicion" that criminal activity is about to be committed or that a felony has occurred rather than on the basis of probable cause). Although insufficient by itself to justify a stop, petitioner's furtive behavior specific to the computer bags prior to his boarding of the trolley (Docket Entry # 11, pp. 33 & 42) may support the police officers' reasonable suspicion that a felony had occurred. See United States v. Carr, 674 F.3d 570, 574 (6th Cir. 2012) (combination of the defendant's furtive movements with the officers' identification of what appeared to be illegal contraband provided reasonable suspicion sufficient

to support an unwarranted stop). In addition to petitioner's furtive behavior, Officer Ford observed petitioner without the computer bags and Detective Brooks observed petitioner a short time later with the computer bags. (Docket Entry # 11, p. 33). As a result, the officers' identification of what appeared to be stolen laptop computers combined with petitioner's furtive behavior at the pay telephone and his attempt to conceal the computer bags between two trash barrels (Docket Entry # 11, pp. 507-511) established the reasonable suspicion required for a warrantless stop. See Carr, 674 F.3d at 574; see also United States v. Sokolow, 490 U.S. 1, 9 (1989) ("combination of suggestive circumstances, largely innocent in and of themselves, may constitute the 'reasonable suspicion' necessary to justify a Terry stop").

The combination of information possessed by the police officers established the reasonable suspicion required for petitioner's warrantless stop. Once petitioner was stopped, police officers performed a pat frisk which produced a metal pry bar with paint chips on the end. (Docket Entry # 11, p. 34). The police officers were within their authority to perform a pat frisk of petitioner during the routine Terry stop. See United States v. Brake, 666 F.3d 800, 805 (1st Cir. 2011) (a pat frisk may accompany an investigatory stop whenever officer has reason

to believe suspect may be armed and dangerous).  Here, the
officers had reason to believe that petitioner may be armed and
dangerous given their reasonable suspicion of his involvement in
a recent break in.  See Schubert v. City of Springfield, 589
F.3d 496, 502 (1st Cir. 2009) (concluding that defendant's
innocuous appearance did not undercut the reasonableness of
police officer's concern about potential criminal activity based
on his "on-the-spot observations" of specific, articulable
facts).

Once the pat frisk revealed a concealed metal pry bar
containing paint chips consistent with use in a break in (Docket
Entry # 11, p. 42), the police officers possessed the probable
cause to arrest petitioner.  See Commonwealth v. Storey, 291
N.E.2d 898, 904-905 (Mass. 1979) ("probable cause exists where,
at the moment of arrest, the facts and circumstances within the
knowledge of the police are enough to warrant a prudent person
in believing that the individual arrested has committed or was
committing an offense").  The search of petitioner's bags was
then permissible as a search incident to a lawful arrest.  See
United States v. Robinson, 414 U.S. 218, 228 (1973)
(distinguishing between a pat frisk in a Terry stop and a more
extensive search incident to a lawful arrest).  Thus, even
assuming that the motion judge discredited Officer Ford's

testimony that petitioner stated "I just found those" while on the trolley, the evidence and surrounding circumstances still suffice to show that a meritorious Fourth Amendment issue does not exist within the meaning of Kimmelman.

Likewise, even assuming that the court discredited Detective Brooks' testimony at the suppression hearing that the pat frisk occurred after petitioner was removed from the train, the evidence and surrounding circumstances still do not show a meritorious Fourth Amendment issue. At the time the police officers approached petitioner on the trolley, they had a reasonable suspicion for a warrantless stop as previously discussed. See Terry, 392 U.S. at 27 ("[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger"). As a result, petitioner fails to prove a meritorious Fourth Amendment claim.

2. Whether Exclusion of Evidence Would Have Changed Trial Outcome

Petitioner is also unable to demonstrate the second prong of the Kimmelman standard, i.e., a reasonable probability that the outcome of trial would have been different absent the excludable evidence. Kimmelman, 477 U.S. at 375. In the case

at bar, petitioner alleges that the exclusion of his inculpatory

statement, "I just found those," would have been fatal to the

legal justification for the warrantless stop and seizure.

(Docket Entry # 13).  Petitioner presumes that had trial counsel

established on cross examination that Officer Ford had made

prior inconsistent statements of the timing of the statement, "I

just found those," the motion judge would have discredited the

testimony on this point and the remaining evidence would have

been insufficient to establish reasonable suspicion thereby

violating his Fourth Amendment rights.  (Docket Entry # 13).  As

already discussed, petitioner would have been unable to

establish a meritorious Fourth Amendment claim even if the

motion judge had discredited Officer Ford's testimony.  Thus,

even despite petitioner's allegations regarding the inconsistent

testimony and police report, the police officers had a justified

Terry stop.  See Johnson v. Turner, 624 F.3d 786, 792-93 (7th

Cir. 2010) (despite the petitioner's allegations of

inconsistencies in police report, search was still

constitutional); see also Fenton v. United States, 2009 WL

230081, *10 (D.Me. Jan. 29, 2009) (outcome of case would still

be the same even if counsel had cross examined witnesses on

timing discrepancies).  As stated above, the police possessed

the adequate reasonable suspicion to justify the intrusion even

absent the excludable evidence. As a result of this intrusion, the pat frisk upon petitioner's removal from the trolley was similarly appropriate as a cautionary routine following a justified Terry stop. See Adams v. Williams, 407 U.S. 143, 146 (1972) (a pat frisk logically accompanies an investigatory stop whenever an officer "has reason to believe that the suspect is armed and dangerous").

Thus, this court need not explore whether petitioner was prejudiced by trial counsel's failure to impeach the inconsistent testimony and concludes that petitioner's speculation about the motion judge's credibility determination is insufficient to satisfy the second prong of the federal Kimmelman standard. See Mediina v. United States, 2008 WL 4974597, *5 (D.R.I. Nov. 21, 2008); see also United States v. Caggiano, 899 F.2d 99, 102 (1st Cir. 1990) (when there is a valid search and seizure the petitioner's Fourth Amendment claim is meritless and he can "show no prejudice" under the Kimmelman standard). Thus, even if the impeachment evidence discredited Officer Ford and Detective Brooks' testimony as to the timing of petitioner's inculpatory statement and pat frisk, petitioner fails to show a reasonable probability that the outcome of the suppression hearing would have been different. See United States v. Jimenez, 2010 WL 5092808, *4 (D.R.I. Dec. 7, 2010)

(rejecting ineffective assistance of counsel claim under Kimmelman's second prong because even without the excludable evidence "other circumstances" supported issuance of search warrant and thus denial of the suppression motion).  As a result, petitioner fails to establish a reasonable probability that the outcome of the suppression motion would have been different absent the excludable evidence.

III.  Ground Two

In ground two, petitioner contends that he was deprived of his Sixth Amendment right to effective assistance of counsel by trial counsel's performance during the interlocutory appeal from the allowance of the motion to suppress.  (Docket Entry # 13).  Petitioner alleges that the appeals court erroneously concluded that he acted "furtively" at the pay telephone prior to the warrantless seizure.  (Docket Entry # 11, p. 42).  Petitioner points out that the appeals court made this conclusion despite differing testimonies on the matter from Officer Ford and Detective Brooks.  Although Officer Ford testified that petitioner held the telephone 18 inches from his head (Docket Entry # 11, p. 510) and "did not appear" to be talking into the receiver (Docket Entry # 11, p. 507), Detective Brooks testified that petitioner did "appear to be talking" into the pay telephone (Docket Entry # 11, p. 545).

Petitioner submits that trial counsel did nothing to
challenge the appeals court's factual conclusion about
petitioner's conduct at the pay telephone despite having several
procedural mechanisms at his disposal for this purpose and
despite the importance of this factual conclusion to
petitioner's legal claim.  (Docket Entry # 13).  Additionally,
petitioner contends that trial counsel did not petition the
appeals court for rehearing pursuant to Rule 27, Mass. R. App.
P., nor did counsel move for reconsideration in the trial court
under Rule 30(b), Mass. R. Crim. P.  (Docket Entry # 13).  In
short, petitioner asserts that trial counsel's failure to avail
himself of any of the appropriate mechanisms to correct the
factual record on an issue that materially affected the outcome
of the motion to suppress was objectively unreasonable and
deprived petitioner of his Sixth Amendment right to effective
assistance of counsel.  (Docket Entry # 13).

Similar to ground one, because the appeals court reached
the merits of the Sixth Amendment claim, subsection 2254(d)(1)'s
"unreasonable application" standard of review applies.  See
Terry Williams, 529 U.S. at 409; see also Teti, 507 F.3d at 57.
Respondent correctly maintains that the appeals court's
characterization of petitioner's behavior as furtive was
permissible when reviewing a motion to suppress.  (Docket Entry

# 15).  In reviewing a ruling on a suppression motion,

Massachusetts law states that an appeals court "may supplement"

the motion judge's "finding of facts if the evidence is

uncontroverted and undisputed and where the judge explicitly or

implicitly credited the witness's testimony."  <u>Commonwealth v.

Isaiah I.</u>, 861 N.E.2d 404, 407 (Mass. 2007).  In the case at

bar, the motion judge found that:

> The detective saw [petitioner] place the computer bags
> between two barrels as he picked up the telephone receiver.
> The officers observed [petitioner] look up and down the
> street and as the MBTA Green Line trolley approached,
> [petitioner] hung up the phone, reached down, and retrieved
> the two bags and proceeded to board the trolley.

(Docket Entry # 11, p. 33).

The appeals court accepted this finding and supplemented

the record with the finding that petitioner held the telephone

receiver "about eighteen inches away from his head and did not

appear to be speaking."  (Docket Entry # 11, p. 40).  The

appeals court used this testimony to conclude that petitioner

"acted furtively at the telephone."  (Docket Entry # 11, p. 42).

Officer Ford's testimony at the suppression hearing fully

supports this supplemental finding.  Petitioner points out,

however, that the record was not uncontroverted because

Detective Brooks testified that petitioner picked up the

telephone receiver and did "appear to be talking."[20]  (Docket

---

[20]  <u>See</u> footnotes ten, 11 and related text.

Entry # 11, p. 346).  Because trial counsel did not contest and challenge these findings by the appeals court, petitioner submits trial counsel rendered ineffective assistance and there is a reasonable probability that the ultimate outcome on the suppression motion would have been different.  (Docket Entry # 13).

The Supreme Court "recently reinforced the 'doubly' deferential standard [for ineffective assistance of counsel claims] that applies to a state prisoner's claims in a federal habeas petition that a state court has unreasonably applied the Strickland principles."  Jewett v. Brady, 634 F.3d 67, 75 (1st Cir. 2011) (quoting Harrington v. Richter, 131 S.Ct. 770, 788 (2011)).  Under Strickland, the petitioner has the burden to show by a preponderance of the evidence that:  "(1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different."  Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996); accord Gonzalez-Soberal v. United States, 244 F.3d 273, 277 (1st Cir. 2001) (same).

Under the ineffectiveness prong, petitioner must show that "'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the

Sixth Amendment.'" Smullen, 94 F.3d at 23 (quoting Strickland, 466 U.S. at 687). Under Strickland there is also "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689; see Harrington, 131 S.Ct. at 790. Consequently, the ineffective assistance prong is satisfied "only where, given the facts known at the time, counsel's 'choice was so patently unreasonable that no competent attorney would have made it.'" Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006).

The second Strickland prong requires a showing that "counsel's errors prejudiced the defense." Gonzelez-Soberal, 244 F.3d at 277. "To establish prejudice, the defendant must show that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different." Sleeper, 510 F.3d at 39. The proper focus is on "the 'fundamental fairness of the proceeding.'" Gonzelez-Soberal, 244 F.3d at 278; accord Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (prejudice prong focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair"). A

"reasonable probability" is therefore "a probability sufficient to undermine confidence in the outcome." Knight, 447 F.3d at 15 (internal quotation marks omitted). Petitioner must show "that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687; see also Lockhart, 506 U.S. at 372 ("[u]nreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him"). In the case at bar, petitioner's claim of ineffective assistance regarding trial counsel's failure to file a petition for rehearing in the appeals court or reconsideration in the trial court is ultimately without merit because it does not satisfy the double pronged Strickland standard.

A.   Ineffectiveness Prong

     The appeals court's characterization of petitioner's behavior as furtive was not a clear error or departure from the principles in Isaiah I., 861 N.E.2d at 407. In describing petitioner's conduct at the pay telephone, the motion judge noted that, "The officers observed the defendant look up and down the street." (Docket Entry # 11, p. 33). They also saw him place the computer bags between two barrels and therefore out of view as he picked up the telephone receiver. (Docket

Entry # 11, p. 33). Such behavior irrespective of whether petitioner did not appear to be speaking supports a finding or conclusion that petitioner acted furtively. As a result, trial counsel's petition for rehearing or reconsideration would have been futile.

A failure to pursue futile tactics does not constitute ineffective assistance of counsel. See Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2010) ("his defense counsel's performance was not deficient when he counseled Mirzayance to abandon a claim that stood almost no chance of success"); see also Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999) ("counsel's performance was not deficient if he declined to pursue a futile tactic"). Accordingly, the appeals court's conclusion that trial counsel's performance was not ineffective (Docket Entry # 11, p. 422) was not an objectively unreasonable application of Strickland and its progeny.

B. Prejudice Prong

Ground two similarly fails to rise to the level of an objectively unreasonable application of the prejudice prong of Strickland. The prejudice prong requires showing that counsel's errors were so serious as to deprive petitioner of a fair trial, or a trial whose result was reliable. See Strickland, 466 U.S. at 687. Here, the ultimate result of the suppression motion was

42

reliable because it would not have been affected by trial counsel's futile petition for rehearing or reconsideration. Accordingly, petitioner's claim for ineffective assistance of counsel under ground two is without merit.

IV.  Ground Four[21]

Ground four (Docket Entry # 1), expanded in petitioner's memorandum (Docket Entry # 13), raises a due process claim. Specifically, petitioner contends that his rights to a fair trial and due process under the Fourteenth Amendment were violated by the trial court's allowing the Commonwealth to admit evidence to establish:  (1) that the police officers knew of petitioner's prior bad acts on the day of the unwarranted stop; and (2) that the police officers formed the opinion that the items in petitioner's possession were stolen.  (Docket Entry # 13).  Although the trial court first allowed petitioner's motion in limine to exclude evidence of his prior misconduct, the court later permitted the Commonwealth to submit evidence regarding police knowledge of petitioner's prior misconduct and their belief that petitioner was carrying stolen property at the time of the warrantless seizure.  (Docket Entry # 11, p. 867).

Respondent argues that the claim is not exhausted and, in the alternative, primarily concerns an issue of state

---

[21]  As noted in footnote one, petitioner withdrew ground three.

evidentiary law that does not rise to the level of a violation of the Due Process Clause.  Subsection 2254(b)(1)(2) provides, "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(2).  Bypassing exhaustion, the due process claim fails on the merits as discussed below.

Federal habeas relief will only be granted if admission of the evidence "rendered the trial so fundamentally unfair that it violated the Due Process Clause."  Kater v. Maloney, 459 F.3d 56, 64 (1st Cir. 2006) (finding a state court's evaluative judgment as an unreasonable application of clearly established federal constitutional standards is "very rare"); see Sanna, 265 F.3d at 12-13 (habeas review unavailable for state law error except "extreme cases" where state law or practice betrays "fundamental principle of justice" under Due Process Clause).  Petitioner filed a motion in limine to exclude evidence of police knowledge of his criminal past.  While the trial court granted the motion, the court cautioned trial counsel that should he open the door to such evidence, it would then become admissible.  (Docket Entry # 11, pp. 565-566).  After the Commonwealth admitted in its opening statement that no one actually saw petitioner enter the apartment from which the items

were stolen (Docket Entry # 11, p. 718), trial counsel took advantage of this admission in his opening statement and through cross examination of the arresting officers by insinuating to the jury that there was no basis for the police officers to stop petitioner and that petitioner had been unlawfully targeted on the trolley by "a small army of police officers." (Docket Entry # 11, pp. 720-721 & 828). Only after the trial court deemed that trial counsel had "opened the door" did the court then permit the Commonwealth to introduce the previously excluded evidence in order to rebut trial counsel's theory. (Docket Entry # 11, pp. 825-833). The trial judge determined that the Commonwealth's evidence of police officers' prior knowledge of petitioner was therefore relevant to an issue in the case. See Commonwealth v. Petrillo, 735 N.E.2d 395, 398 (Mass. 2000) (evidence must have a rational tendency to prove an issue in the case in order to be admissible); (Docket Entry # 11, pp. 828-833). Furthermore, the trial court gave a limiting instruction cautioning the jurors that petitioner was not charged with any other crimes and that they should not draw any negative inferences from Detective Brooks' testimony regarding his prior knowledge of petitioner. (Docket Entry # 11, pp. 868-869). Similarly, immediately after Detective Brooks testified that he formed an opinion that the property he saw petitioner carry was

stolen, the trial court gave an additional limiting instruction

not "take someone else's opinion as to whether something

occurred in making your decision." (Docket Entry # 11, pp. 876-

877). The trial court also explained that the jurors could

"consider this evidence solely to the extent to just lay some

context to the reason why the defendant was stopped." (Docket

Entry # 11, p. 877). As a result, the due process claim does

not qualify as the "very rare" case of a federal due process

violation, see Kater, 459 F.3d at 64 (1st Cir. 2006), let alone

an unreasonable application of clearly established Supreme Court

due process law.

Additionally, as argued by respondent, even if state law

error exists in this case, petitioner's claim for due process is

still denied because the appeals court properly applied the

federal harmless error standard. See Petrillo v. O'Neill, 428

F.3d 41, 44-45 (1st Cir. 2005) (habeas relief denied where state

court applied federal harmless error standard). "On direct

appeal, a state court confronted by a preserved constitutional

error must set aside the judgment unless it is satisfied that

the error was harmless beyond a reasonable doubt." Sanna, 265

F.3d at 14 (citing Chapman v. California, 386 U.S. 18, 24

(1967)). The Chapman standard for harmless error states that

the factors to be considered in a harmless error determination

include the relationship between the evidence and the defense theory of the case, the weight of the evidence against the defendant and the availability of curative instructions.  <u>See</u> <u>Commonwealth v. Mahdi</u>, 448 N.E.2d 704, 714-715 (Mass. 1983); <u>see</u> <u>also</u> <u>Petrillo</u>, 428 F.3d at 45 (nothing that <u>Mahdi</u> "expressly incorporates the federal *Chapman* standard").  The consideration of all these factors can be found in the appeals court's decision.  Here, the appeals court noted that the trial court gave appropriate limiting instructions to the jury on both occasions.  <u>See</u> <u>Lewis</u>, 920 N.E.2d at 327; (Docket Entry # 11, pp. 422-423).  Further, as neither the reasoning nor the decision of the appeals court directly contradicted <u>Chapman</u>, it is irrelevant that the appeals court failed to cite to any federal law.  <u>See</u> <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).  As a result, this court concludes that petitioner's request for due process relief is without merit.


<u>CONCLUSION</u>

In accordance with the foregoing discussion, this court **RECOMMENDS**[22] that the request to deny the petition in

---

[22] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  Any arty may respond to another party's objections within 14 days after service of the objections.

respondent's brief (Docket Entry # 15) be **ALLOWED** and that the petition be dismissed with prejudice.

　　　　　　　　　　　　　　　 /s/ Marianne B. Bowler
　　　　　　　　　　　　　　**MARIANNE B. BOWLER**
　　　　　　　　　　　　　　United States Magistrate Judge

Failure to file objections within the specified time waives the right to appeal the order.

48